**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CRIMINAL ACTION NO. 20-19-DLB-EBA**

**UNITED STATES OF AMERICA**                               **PLAINTIFF**

v.       **ORDER ADOPTING REPORT AND RECOMMENDATION**

**RONALD STINESPRING**                                     **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the July 9, 2021 Report and Recommendation (R&R) of the United States Magistrate Judge Edward B. Atkins (Doc. # 34), wherein he recommends that the Court deny Defendant Ronald Stinespring's Motion to Suppress (Doc. # 19). Defendant Stinespring having filed Objections (Doc. # 35), and the United States having filed a Response to his Objections (Doc. # 37), the R&R is now ripe for the Court's consideration. For the reasons that follow, Defendant Stinespring's Objections are **overruled**, the R&R is **adopted** as modified herein, and the Motion to Suppress is **denied.**

**I.**     **FACTUAL BACKGROUND**

On November 18, 2020, Defendant Ronald Stinespring was indicted for two counts of child pornography related crimes: (I) production of visual depictions in violation of 18 U.S.C. § 2251(a), and (II) possession of visual depictions in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. # 1). The underlying affidavits of Trooper Tanner Johnson of the Kentucky State Police allege that on March 1, 2019, he received information from a minor victim that she had been staying with Defendant Stinespring with her two sisters for the

1

last two years. (Doc. # 19-1 at 2). The victim reported that Defendant Stinespring punished her "by tying her up with paracord rope and using a flashlight stun gun to shock the top of her feet," and also "shocked her under her arm pits and used a wood board to strike her in the back of her legs." (*Id.*). Upon these injuries being verified at the Elliott County Department of Social Services Office, Trooper Johnson sought a warrant for the residence of Defendant Stinespring ("Warrant 1"). (*Id.*). After executing Warrant 1, Trooper Johnson sought an additional warrant ("Warrant 2") to take a video recording of the living conditions and recover any electronic devices in the home that may contain evidence of child abuse. (Doc. # 19-2).

Defendant Stinespring's Motion to Suppress challenges the legality of Warrant 2, which forms the basis for the child pornography offenses brought against him. In Stinespring's Motion to Suppress, he argues that Warrant 2 lacks the probable cause necessary to support the search of Stinespring's electronic devices. (Doc. # 19 at 3). The electronic devices recovered pursuant to Warrant 2 include: two cell phones, two computers, one tablet, fourteen large internal hard drives, one large external hard drive, nine small external hard drives, one small internal hard drive, one computer mother board, and two SIM cards. (Docs. # 19 at 2, 19-2 at 3, and 23-3 at 2). Officers also seized an ultrasound fetal Doppler, pregnancy tests, and birth control pills. (*Id.*).

Following the execution of Warrant 2, Trooper Justin Flannery of the Kentucky State Police sought three more search warrants related to the electronic evidence. (Docs. # 23-3 through 23-5). Warrant 3 permitted a search of the electronic items seized in Warrant 2 for evidence of child pornography, human trafficking, or physical or sexual abuse. (Doc. # 23-3 at 1). Warrant 4 permitted a further search of the electronic items

after a forensic examiner found depictions of what appeared to be child exploitation. (Doc. # 23-4 at 4-5). Warrant 5 authorized the final search of the Stinespring residence and included authorization to confiscate cameras or electronic items capable of storing photographs after two minor victims disclosed that Stinespring had taken sexual depictions of them. (Doc. # 23-5 at 1-2).

Following the filing of Stinespring's Motion to Suppress, Magistrate Judge Edward Atkins held an evidentiary hearing so that evidence and testimony could be presented concerning the validity of Warrant 2. (Doc. # 26). Of particular importance to Judge Atkins was the applicability of the doctrines of good faith reliance on the search warrant and inevitable discovery. (*Id.*). After the hearing, Judge Atkins requested the parties further brief the issues of good faith reliance on the search warrant and inevitable discovery. (Doc. # 29). On June 14, 2021, Defendant Stinespring filed a supplemental memorandum addressing these issues, (Doc. # 32), and on June 25, 2021, the United States filed its response. (Doc. # 33).

**II.     REPORT AND RECOMMENDATION**

On July 9, 2021, Magistrate Judge Atkins filed his R&R recommending that Defendant Stinespring's Motion to Suppress be denied due to the applicability of the good faith exception. (Doc. # 34).

First, Judge Atkins explained that in order for a search to be reasonable under the Fourth Amendment, a warrant supported by probable cause is needed. (*Id.* at 5). To establish probable cause, an affidavit should demonstrate "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." (*Id.*) (quoting *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983)). There must "be a nexus

3

between the place to be searched and the evidence sought." (*Id.*) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (internal citations omitted)).  The United States conceded that the nexus necessary to support probable cause was absent. (*Id.* at 6); (Doc. # 23 at 6).  Therefore, Judge Atkins turned to the United States' argument that Warrant 2, and the evidence obtained from its execution, should not be suppressed because of the doctrines of inevitable discovery and good faith reliance. (Doc. # 34 at 6-7).

Judge Atkins first outlined the inevitable discovery doctrine, an exception to the exclusionary rule, that prevents evidence from being suppressed "if the Government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means had the government misconduct not occurred." (*Id.* at 7) (citing *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995)).  The Government must demonstrate "(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the police possessed the leads making the discovery inevitable at the time of the misconduct; and (3) that the police were actively pursuing an alternate line of investigation prior to the misconduct." (*Id.*) (citing *Kennedy*, 61 F.3d at 499).  While the United States argued that it could meet this burden, Judge Atkins found otherwise because they could not meet requirement (2) and (3) of the test set out in *Kennedy*. (*Id.* at 8-9).  Judge Atkins determined that the United States failed to demonstrate that the police possessed the lead making discovery inevitable *prior* to the misconduct. (*Id.*).  When the police applied for Warrant 2, they had yet to uncover electronic evidence relating to sexual abuse and could not show that information obtained

4

from the interviews of the minor victim were part of an independent line of investigation. (*Id.*).

However, notwithstanding the inapplicability of the inevitable discovery doctrine, Judge Atkins recommended that the evidence not be suppressed because the officers relied on Warrant 2 in good faith. (*Id.* at 9). The *Leon* good faith exception allows for evidence "'obtained in objectively reasonable reliance' on a 'subsequently invalidated search warrant'" to be saved from suppression. (*Id.*) (quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)). This exception does not apply if the affidavit "so lacks indicia of probable cause that belief in the existence of probable cause would be objectively unreasonable." (*Id.*) (citing *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013)). While Stinespring alleged that the warrant was so facially deficient that the officer could not have presumed it to be valid, Judge Atkins opined that while the warrant lacked the necessary nexus to support a finding of probable cause, it did contain the minimally sufficient nexus needed to support an assertion of good faith. (*Id.* at 11-12); *see Brown*, 828 F.3d at 385. In particular, Judge Atkins relied on the affiant's statement which provided factual context to support a finding of a minimally sufficient nexus—specifically that while conducting interviews officers discovered that a computer and cell phone at Stinespring's residence may contain evidence of child abuse. (*Id.* at 12). Judge Atkins further found that Warrant 1 being granted a day prior on almost an identical affidavit necessitated that Warrant 2 could not be so lacking in indicia of probable cause that an officer could not reasonably presume its validity. (*Id.* at 11).

5

Ultimately, Judge Atkins recommended that Stinespring's Motion to Suppress evidence obtained from Warrant 2 be denied due to the applicability of the good faith exception. (*Id.*).

## III. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion," including a motion to suppress. Under Federal Rule of Criminal Procedure 59(b)(1), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." FED. R. CRIM. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered waiver of the party's right to review. FED. R. CRIM. P. 59(b)(2).

Objections to a magistrate judge's recommended disposition must be "specific written objections to the proposed findings and recommendations." *Id.* This necessitates that "vague, general, or conclusory objections," will not be considered and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). Further, an objection that does "nothing more than state a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v. Shephard*, No. 09-81, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (quoting

6

*VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).  Specific objections "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alteration in original) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. July 18, 1997)).

### B.   Defendant Stinespring's Objections

Defendant Stinespring raises only one objection to the Magistrate's Report and Recommendation—that the good faith exception is inapplicable because Warrant 2 was a "bare-bones" warrant which depended on "mere suspicion, beliefs, and conclusions" in contravention of precedential law in the Sixth Circuit.  (Doc. # 35 at 1-2).  Stinespring argues that Magistrate Judge Atkins failed to consider that the affidavit underlying Warrant 2 "omit[ted] critically important information" such as "not indicat[ing] who conducted the interviews," "who was interviewed," "the interviewees' source or basis of knowledge," and "no information" regarding the "credibility of the source of information." (*Id.* at 4).  Stinespring further takes issue with the Magistrate Judge's consideration of Warrant 1 and facts known to the officer that were not included in the affidavit, which violated Sixth Circuit precedent requiring that a probable cause determination be bound to the four corners of the affidavit.  (*Id.* at 6).  Due to these perceived failures, Stinespring requests that this Court sustain his specific objection and grant his Motion to Suppress. (*Id.* at 7).

### C.   Application of the *Leon* Good Faith Exception

While the United States conceded that the nexus supporting probable cause for Warrant 2 was lacking, Judge Atkins ultimately recommended not suppressing the

evidence obtained from Warrant 2 due to the *Leon* good faith exception.  (Doc. # 34 at 11-12).

Generally, if evidence is obtained in violation of the Fourth Amendment, the "exclusionary rule [] precludes its use in a criminal proceeding against the victim of the illegal search and seizure."  *Illinois v. Krull*, 480 U.S. 340, 347 (1987).  However, there is an exception to this rule, disallowing the suppression of evidence when it was "'obtained in objectively reasonable reliance' on the 'subsequently invalidated search warrant.'"  *Brown*, 828 F.3d at 385 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  The Supreme Court has established four situations in which an officer's reliance on an invalid warrant cannot be considered objectively reasonable, and therefore cannot be excused by the good faith exception—where (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for [their] reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned [their] judicial role"; (3) the "warrant based on an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  *Leon*, 468 U.S. at 923*.*  Although unclear from his Objection, it appears Stinespring argues that only the third scenario is applicable in reviewing Warrant 2.  (Doc. # 35 at 2-6).

The affidavit underlying Warrant 2, which Stinespring challenges as "so lacking in indicia of probable cause," states in relevant part:

> On the 1st day of March 2019 a Search Warrant [Warrant 1] was conducted at this residence and due to the location and the limited day light hours and

8

>no lighting in the residence I was unable to document the living conditions. It was discovered after leaving the residence while conducting interviews that there was a computer and a cell phone at the residence that may contain evidence of child abuse and continual residence of the property.

(Doc. # 19-2 at 2).[1]  Warrant 2 also described an interview with the minor victim where she stated she lived at Stinespring's residence for the last two years with her two sisters, had never left the property, and was physically abused by Stinespring in a myriad of ways. (Doc. # 19-2 at 2).

An affidavit "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).  An affidavit which contains "a minimally sufficient nexus between the illegal activity and the place to be searched" will not be considered "bare bones." *Id.* at 496-97 (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc)).  Importantly, a "bare bones affidavit should not be confused with one that lacks probable cause." *Id.* at 497.  This distinction is especially important as it relates to Stinespring as he argues that Judge Atkins "failed to establish an actual nexus between the allegations of physical abuse [and] electronic devices seized." (Doc. # 35 at 6).  However, all that the United States must illustrate is that the affidavit contains "'*some* connection, regardless of how remote it may have been'… 'between the criminal activity at issue and the place to be searched,'" *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 749-50 (6th Cir. 2005)).  As long as *some* connection is established, "then the affidavit is not bare bones and official reliance on it is reasonable." *Id.*

---

[1]  Warrant 2 was substantially similar to Warrant 1, with only the addition of the preceding paragraph.  (*See* Doc. # 19-1 at 2).

Here, Trooper Johnson presented a variety of evidence that tends to create *some* connection between Stinespring's criminal activity and the electronic devices. This evidence included: (1) a minor victim's statement that she had been staying with Stinespring, along with her two sisters, for the last two years, (2) her statements alleging physical abuse by Stinespring—including tying her up, using a stun gun to shock her feet and arm puts, striking her with a wood board—injuries of this type were verified by the Elliott County Department of Social Services, and (3) interviews indicating that there was a computer and cell phone at the residence that potentially contain evidence of child abuse. (Doc. # 19-2 at 2). In reading the affidavit as a whole, it is clear that there were substantial allegations of child abuse, and *some* connection between that abuse and electronic devices, which was established by interviews performed by the Kentucky State Police. As explained by Judge Atkins:

> Assertions that an executing officer's reliance on a search warrant was not in good faith can be overcome with a "modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Laughton*, 409 F.3d at 749. While insufficient to establish probable cause, the warrant certainly contains a minimally sufficient nexus between the illegal activity and the place to be searched.

(Doc. # 34 at 12). Importantly, Warrant 2 also described an additional purpose for recovering electronic devices from Stinespring's residence—to find "evidence of . . . continual residence of the property." (Doc. # 19-2 at 2). Considering the evidence contained in the affidavit, it was not unreasonable for law enforcement to rely upon Warrant 2 to seize and search Stinespring's electronic devices. The substantial allegations of child abuse, corroborated by the Elliott County Department of Social Services, in conjunction with an interviewee indicating that a computer or cell phone in the home contained evidence of this abuse and continued residency, meets the lenient

standard of a "modicum of evidence . . . connect[ing] the criminal activity described in the affidavit to the place to be searched." *Laughton*, 409 F.3d at 749; *see also United States v. Neuhard*, 149 F. Supp. 3d 817, 823-24 (E.D. Mich. 2016) (holding that probable cause was present when a minor victim indicated that she was abused, and depictions of this abuse were housed on electronic devices in the defendant's possession).

Additionally, "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *United States v. White*, 874 F.3d 490, 500 (6th Cir. 2017). While "vaguely asserting that a suspect had access to rooms in a particular residence will not establish probable cause to search that residence, but providing some factual detail about the residence permits an officer to reasonably infer that is factual support for the assertion." *Id.* As discussed above, the affidavit supporting Warrant 2 laid out a myriad of factual details, including that the minor victim had been living at Stinespring's residence for two years, during that time suffered significant abuse perpetrated by Stinespring, and never left the property. (Doc. # 19-2 at 2). While not explicitly stated in Trooper Johnson's affidavit, it is a reasonable inference to presume that the individuals with personal knowledge of Stinespring's abuse and familiarity with his residence were the minor victims in this case. Based on this inference, it reasonably follows that the interviewee who indicated that there was a computer and a cell phone that may contain evidence of child abuse at the residence must have been one of the minors who was previously living with Stinespring. While the affidavit is certainly not a model of clarity, it does clearly lay out evidence of Stinespring's abuse, and connects that abuse with a computer and a cellphone located on his property. Therefore, like in *White*, the affidavit does not vaguely assert that Stinespring's electronics

11

contained evidence of child abuse, because it also provides details of the abuse and information from one of the minor victims that evidence of this abuse may be discovered on his electronic devices.

When reviewing a warrant through the lens of *Leon*, the Supreme Court has determined that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . [p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 921. Because deterrence is the underlying policy justification of the exclusionary rule, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* Therefore, "[o]nly when law enforcement officials operate in 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights' will the 'heavy toll' of suppression 'pay its way.'" *White*, 874 F.3d at 497 (quoting *Davis v. United States*, 564 U.S. 229, 237-38 (2011). Here, the defects in the underlying affidavit would not be "apparent in the eyes of a reasonable official" and therefore excluding the evidence obtained by Warrant 2 would not serve the underlying purpose of the exclusionary rule. *Id.* Taking into consideration the policy underlying the exclusionary rule, and the presence of a minimally sufficient nexus between Stinespring's abuse of the minor victim and his electronic devices, Stinespring's objection is **overruled**.

## IV. CONCLUSION

Ultimately, Defendant Stinespring failed to raise a meritorious objection to Judge Atkins's Report and Recommendation. Accordingly, because the Court finds Judge Atkins's analysis and conclusions persuasive as modified herein,

**IT IS ORDERED** as follows:

(1) Judge Atkins's Report and Recommendation (Doc. # 34) is **adopted as modified herein**;

(2) Defendant Stinespring's Objection (Doc. # 35) to the Report and Recommendation is **overruled**;

(3) Defendant Stinespring's Motion to Suppress (Doc. # 19) is **denied**;

(4) The time period from March 30, 2021, through today's date, totaling 155 days, is excluded from the provisions of the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(1)(D) & (H); and

(5) This matter is scheduled for an **in-court Status Conference** on **Friday, September 10, 2021 at 9:00 a.m. in Ashland**.

This 1st day of September, 2021.



Signed By:
*David L. Bunning* DB
United States District Judge

O:\DATA\ORDERS\Ashland Criminal\2020\20-19 Order Adopting R&R Stinespring.docx